IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHATMAR, INC. dba MONTEREY BEACH HOTEL, | NO. C 04-02347 JW |
| Plaintiff(s), | **ORDER GRANTING BANKERS INSURANCE COMPANY'S RULE 56 MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BANKERS INSURANCE COMPANY, | |
| Defendant(s). | |

## I. INTRODUCTION

In this lawsuit, Plaintiff Chatmar, Inc. dba Monterey Beach Hotel ("Chatmar") claims that it suffered damage by flooding that occurred during two major winter storms, for which it allegedly has not been compensated adequately by its insurance company, Bankers Insurance Company ("Bankers Insurance"). Chatmar initiated the present lawsuit in state court, claiming breach of contract, breach of the covenant of good faith and fair dealing, and fraud. Bankers Insurance removed the action invoking original exclusive jurisdiction under the National Flood Insurance Program, 42 U.S.C. § 4072; federal question jurisdiction pursuant to 28 U.S.C. § 1331; diversity jurisdiction pursuant to 28 U.S.C. § 1332; and the forum selection clause found in the insurance policies at issue. The fraud claim was voluntarily dismissed by Chatmar on July 16, 2004. On February 11, 2005, all extra-contractual claims for damages were dismissed, thereby leaving only the breach of contract claim before this Court.

Bankers Insurance now moves for summary judgment, arguing that no further amounts of U.S. Treasury benefits can be paid to Chatmar. On Monday, May 23, 2005, this Court held a hearing

regarding Bankers Insurance's motion. Based upon the arguments advanced by counsel at the hearing and in their papers, Defendants' motion is granted.

## II.  BACKGROUND

Chatmar owns a hotel situated on the coast along the Monterey Bay. On or about November 9, 2002, Chatmar obtained coverage under five Standard Flood Insurance Policies ("SFIP's") issued to it under the National Flood Insurance Program ("NFIP"). The policies related to five separate buildings which formed part of Chatmar's hotel. Each of the policies have $500,000.00 per occurrence limits.

The policies were issued to Chatmar by Bankers Insurance. Bankers Insurance is a Write Your Own ("WYO") Carrier participating in the U.S. Government's NFIP pursuant to the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001 et seq.) (the "NFIA"). Bankers Insurance acts in a fiduciary capacity as the fiscal agent of the United States with respect to the SFIP's. Thus, all claims are paid through Bankers, which in turn draw upon U.S. Treasury funds.

Chatmar claims to have suffered damage by flooding that occurred during two major winter storms: one on December 16, 2002, and another on December 21, 2002. Chatmar submitted unsigned, unsworn proofs of loss on its claims to Bankers representative Russell Tinsley in February 2003. When Mr. Tinsley accepted these proofs of loss from Chatmar, he never told anyone affiliated with Chatmar that strict compliance with the requirements of signing and swearing the proofs of loss was necessary. Chatmar subsequently submitted additional documentation under proof of loss forms that were signed and notarized in April of 2003, along with a request for a waiver of the 60-day Proof of Loss rule. A waiver was issued for the December 16, 2002 loss only. An insurance adjuster was sent out to investigate Chatmar's loss, and Chatmar was eventually paid a total claim payment of $2,433,533.95 in building damages for the December 16, 2002 loss. This represented $500,000.00 in policy limits for four policies and $433,533.95 as to the fifth policy.

Chatmar now seeks $2.5 million for the alleged damages from the December 21, 2002 event. Bankers Insurance resists paying out, arguing that Chatmar failed to file a timely proof of loss in

2

1  accordance with the requirements of Article VII(J)(4) of the SFIP, and that the loss payment of more
2  than $2.43 million covered all damages documented to date.

### III. STANDARDS

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

A movant for summary judgment always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If the movant does not satisfy this initial burden, the non-movant has no obligation to produce anything and summary judgment must be denied. If, however, the movant meets this initial burden, then the burden shifts to the non-movant to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. In other words, to preclude entry of summary judgment, the non-movant must bring forth genuine issues of material fact. An issue of fact is "genuine" if it can reasonably be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id. In short, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

It is this Court's responsibility "to determine whether the 'specific facts' set forth by the non-movant, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita,

475 U.S. at 587.  In conducting its analysis, this Court must draw all reasonable inferences in favor of the non-movant.  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255).

## IV. DISCUSSION

The SFIP's at issue in this case are published federal laws and can be found at 44 C.F.R Pt. 61, App. A(2) (2002 edition).  In case of a flood loss to insured property, Article VII(J)(4) of the SFIP requires that the insured do the following:

> 4. Within 60 days after the loss, send [the insurer] a proof of loss, which is [the insured's] statement of the amount [the insured is] claiming under the policy signed and sworn to by [the insured], and which furnishes [the insurer] with the following information:
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. [The insured's] interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the insured property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> I. The inventory of damaged property described in J.3. above

44 C.F.R. Pt. 61, App. A(2)(VII)(J) (2002 ed.)  Because any claim paid by a WYO carrier is a direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required.  See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947).

In the present case, Chatmar submitted the required signed proofs of loss more than sixty days after the December 16 and December 21 floods.  A claimant under a SFIP may not avoid strict enforcement of the sixty-day sworn proof of loss requirement except through a valid waiver by the Federal Insurance Administrator.  Flick v. Liberty Mutual Fire Insurance Co., 205 F.3d 386, 391 (citing 44 C.F.R. § 61.13(d); 44 C.F.R. Pt. 61, App. A(1), art 9(J)(7)).  A waiver of the sixty-day proof of loss requirement was granted only for the December 16, 2002 alleged date of loss, for which $2,433,533.95 in building damages was authorized.  Despite Chatmar's contentions at oral argument

4

1  that the Federal Insurance Administrator had found that Chatmar had acted diligently in pursuing its
2  claims, such findings related only to the December 16, 2002 date of loss. No waivers have been
3  presented to Bankers to authorize the payment of additional amounts for the alleged December 21,
4  2002 storm.

5  Chatmar argues that it submitted timely proofs of loss, albeit "*technically* noncompliant in that
6  they were not signed or sworn by the insured, a requirement under the policy." Because Bankers did
7  not inform Chatmar that its proofs of loss were inadequate before the sixty-day period had elapsed, it
8  is Chatmar's contention that Bankers is estopped from relying on Chatmar's noncompliance as a
9  defense to breach of its policy obligations to pay benefits. The Ninth Circuit, however, has rejected
10 estoppel arguments similar to Chatmar's. In Wagner v. Director, Fed. Emergency Management
11 Agency, 847 F.2d 515, 518 (9th Cir. 1988), the Ninth Circuit held that a group of claimants could not
12 estop the Federal Emergency Management Agency[1] from denying their claims for failure to file a
13 timely sworn proof of loss. In reaching that decision, the Ninth Circuit reasoned that the sworn proof
14 of loss requirement was a condition precedent to a waiver by the federal government of its sovereign
15 immunity and, as such, a procedural requirement that must be taken seriously. Wagner, 847 F.2d at
16 518.

17 Moreover, in Flick, the Ninth Circuit analyzed the Supreme Court's holding in Office of
18 Personnel Management v. Richmond, 496 U.S. 414, 426 (1990), that "judicial use of the equitable
19 doctrine of estoppel cannot grant [a claimant] a money remedy that Congress has not authorized," and
20 concluded that because Richmond was based on the Appropriations Clause, its scope is not limited to
21 the applicability of estoppel to the federal government. Flick, 205 F.3d at 391. "It is an axiomatic
22 principle of constitutional law that the judiciary's power is limited by a valid reservation of

---

[1] The Federal Emergency Management Agency ("FEMA") was delegated its authority by the Department of Housing and Urban Development ("HUD") in 1978 to operate both the NFIP and the Federal Insurance Administration. See Reorganization Plan No. 3 of 1978, §§ 202, 304, 43 Fed. Reg. 41943, 41943-45 (1978). FEMA assumed managerial responsibility for the operation of the program and took full control of the payment or disallowance of all flood insurance claims. Flick, 205 F.3d at 389 (citing Berger v. Pierce, 933 F.2d 393, 395 (6th Cir. 1991).

congressional control over public funds...[W]e would eventually usurp Congress's exclusive power to appropriate money were we to award an unauthorized money claim based on a theory of substantial compliance or notice prejudice." Id. The Flick Court then interpreted Richmond to preclude a court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress. Id. In light of this, it is clear that without a valid waiver by the Federal Insurance Administrator, Chatmar may not rely upon estoppel to compel Bankers to draw upon U.S. Treasury funds where a condition precedent to payment has not taken place.

Chatmar next argues that summary judgment cannot be granted in this case because there are triable issues of fact as to whether strict compliance has been waived, and whether Bankers opted to use an adjuster's report instead of Chatmar's proof of loss. To support this argument, Chatmar cites 44 C.F.R. § 61, App. (A)(2)(VII)(J)(9):

> At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.[2]

The FEMA Claims Manual, however, which is incorporated by reference into the FEMA regulations (44 C.F.R. § 62.23), limits this provision to claims with a maximum value of $7500. Suopys v. Omaha Property & Casualty, 303 F.3d 805, 811 (3rd Cir. 2005). Because Chatmar's claim of $2.5 million far exceeds $7500.00, FEMA does not permit such a claim to be presented via an adjuster's report. Consequently, in the absence of a written waiver from FEMA, Bankers Insurance is barred from accepting the adjuster's report in place of proof of loss, thus prohibiting Bankers Insurance from issuing any further U.S. Treasury funds to Chatmar for the December 21, 2002 events.

//

---

[2]The Court notes that Chatmar misquoted Article VII(J)(9) as giving the insured the option to have the insurer accept the adjuster's report of the loss instead of the insured's proof of loss, and as giving the insured the option to have the insurer require the insured to swear to the report. Chatmar's incorrect rendition of the provision reads as follows: "At your option, we may accept the adjuster's report of the loss instead of your proof of loss...At your option, we may require you to swear to the report." The Court emphasizes that the option to accept the adjuster's report lies with the insurance carrier, not the insured.

**United States District Court**
For the Northern District of California

## V.  CONCLUSION

Due to Chatmar's failure to strictly comply with the SFIP provisions regarding proof of loss, summary judgment is GRANTED in favor of Bankers Insurance.  All other pending motions are deemed moot.

Dated: May 31, 2005

04cv2347sj

/s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Gary R. Gleason grg@farbstein.com
Michael Meheen Fns92@aol.com

Gerald J. Nielsen
Nielsen Law Firm, LLC
3838 N. Causeway Blvd.,
Suite 2850
Metairie, LA 70002

**Dated: May 31, 2005**                                         **Richard W. Wieking, Clerk**

**By:/jwchambers/**
    **Ronald L. Davis**
    **Courtroom Deputy**

**United States District Court**
For the Northern District of California